IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| PETER L. SMITH, | CASE NO.: 1:17 CV 1483 |
| Plaintiffs, | |
| v. | JUDGE DONALD C. NUGENT |
| NATIONSTAR MORTGAGE, *et al.*, | |
| Defendants. | MEMORANDUM OPINION AND ORDER |

This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's Complaint With Class Action Allegations Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF #8). Plaintiff filed an Opposition Brief, and Defendants filed a Reply in Support of their motion. (ECF #15, 16). After careful consideration of the briefs and the Complaint, and a review of all relevant authority, Defendant's motion to dismiss is GRANTED in part.

## STANDARD OF REVIEW

In evaluating a motion for dismissal under Rule 12(b)(6), the district court must "consider the pleadings and affidavits in a light most favorable to the [non-moving party]." *Jones v. City of Carlisle, Ky.*, 3 F.3d. 945, 947 (6th Cir. 1993) (quoting *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980)). However, though construing the complaint in favor of the non-moving party, a trial court will not accept conclusions of law or unwarranted inferences cast in the form of factual

allegations. *See City of Heath, Ohio v. Ashland Oil, Inc.*, 834 F.Supp. 971, 975 (S.D. Ohio 1993). "A plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl' Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly* at 555. In deciding a Rule 12(b)(6) motion, this Court must determine not whether the complaining party will prevail in the matter but whether it is entitled to offer evidence to support the claims made in its complaint. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

## FACTS[1]

Plaintiff brought an action alleging nine causes of action, some of which are individual claims, and some which were brought as putative class action claims. The underlying gravamen of the Complaint is Plaintiff's allegation that Nationstar, together with its wholly owned subsidiary Solutionstar, imposed unnecessary, unreasonable, and otherwise improper fees, including inspection fees and late fees, on him and others who are similarly situated, when they fell behind in their mortgage payments. Plaintiff claims that in his case, the amounts he owed were improperly inflated by the addition of inspection and late fees. He argues that the fees assessed by the Defendants were improper and unwarranted, and that their imposition violated several state and federal laws, as well as Ohio common law principles.

## ANALYSIS

---

[1] In accordance with the applicable standards on a motion to dismiss, the facts in the Complaint have been taken as true for purposes of this opinion.

The Court will look first to the federal claims asserted in the Complaint. Count One alleges a claim under the Fair Debt Collection Practices Act ("FDCPA"); Count Three asserts claims under the Fair Credit Reporting Act ("FCRA"); and, Count Six request relief under the Federal RICO statute, 18 U.S.C. § 1961, *et seq*.

A. Fair Debt Collection Practices Act

Plaintiff claims that Nationstar violated 15 U.S.C. §1692e by "falsely representing the character, amount, or legal status of debt, among other things, including, without limitation, attempt to and/or collecting upon an unlawful debt." (Complaint, ¶ 121). He also claims, among other things, that Defendants violated the FDCPA by "continuing to collect a debt or any disputed portion thereof after failure to properly respond to Plaintiff's verification request." (Complaint, ¶123(d)).

The FDCPA expressly states that all claims must be brought "within one year from the date on which the violation occurs." 15 U.S.C. §1692k. Plaintiff filed this Complaint on June 9, 2017, thus, he is out of time for any violations occurring prior to June 9, 2016. Although this was a re-filed case, having first been filed in the Cuyahoga Court of Common Pleas on February 10, 2016 and dismissed without prejudice on December 27, 2016, the Ohio Savings Statute does not operate to waive or extend the statute of limitations periods for federal claims which have their own statutorily assigned statute of limitations. *Ruth v. Unifund CCR Partners*, 2009 WL 585847, at *6 (N.D. Ohio 2009); *Higginbotham v. Ohio Dep't of Mental Health*, 412 F.Supp.2d 806, 811-12 (S.D. Ohio 2005).

The Complaint cites only three communications, after June 9, 2016, alleged to be part of the factual basis for Plaintiff's claims: (1) Defendant Nationstar sent Plaintiff a notice that his

request for loss mitigation assistance was denied because "Offer not accepted by Borrower/Request Withdrawn;" (2) Defendants issued a default notice to Plaintiff advising that he was in default in the amount of $10,959.01, including late fees, NSF fees, and other fees (which include property inspection fees); and, (3) Defendants sent Plaintiff a mortgage statement that reflected $195.00 in total property inspection fees. (Complaint, ¶ 103-105).

The FDCPA does not apply to every communication between a debtor and debt collector. *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011). "For a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor." *Id.* The communication sent by Nationstar notifying Plaintiff that his request for loss mitigation assistance was denied because it wasn't accepted or was withdrawn, does not fit into the category of communications with the purpose of inducing payment. It appears to be simply a communication noting Nationstar's understanding that Plaintiff did not intend to pursue the loss mitigation options presented to him. Further, Plaintiff does not allege that this communication was false, deceptive or misleading. In fact, in his Opposition to the Defendants' Motion to Dismiss, Plaintiff contends that he had no need such options because he had already entered into a loan modification.

Plaintiff claims that the other two statements within the statute of limitations constitute unlawful, misleading, and deceptive statements because they seek to collect on a debt that includes some amount of improperly assessed inspection fees. Nowhere in Plaintiff's Complaint does he claim that he was not in default on his mortgage, or that Nationstar's notices of default were incorrect based upon the amount owed if the inspection and late fees were included in the debt's tally. Nor does he dispute that the mortgage contract allowed the imposition of reasonable

inspection fees upon default. He also does not dispute that late fees were allowed under the terms of the mortgage. His claims, therefore, rise and fall on the allegation that the inspection fees imposed were not reasonable.

Plaintiff does not allege that the cost of each inspection was unreasonable, and at $15.00 per inspection, it would be hard to imagine how this fee could be considered an unreasonable amount. Nor does he allege that he was charged for inspections that never took place. Rather, Plaintiff claims that the inspections were unnecessary because, despite his default, he was living in the house and he kept it in good repair. This, even if true, does not render the servicer's performance of regular inspections unreasonable. The servicer has no way of knowing that the house is or will remain in good repair without performing inspections. This is especially true when the homeowner is having difficulty making payments, which indicates either financial difficulties or a lack of concern for his ownership of the house. Further, despite Plaintiff's ire at Solutionstar's use of automation, the inspections and imposition of corresponding fees are not improper just because an automated system was used to ensure they were ordered upon default and completed on a regular basis.

To the extent that the general allegations in the Complaint could be read to suggest that the underlying default amount was also in error, any such claim is not pled with sufficient particularity to withstand a dismissal on the pleadings. Although the Complaint lists payments requested and payments made, there is no allegation that the requested payments were incorrect based on the amount of principal, interest, and escrow owed. Escrow amounts can vary year to year and month to month and are based on projections of future amounts owed. Therefore, even if they did result in an over or under payment on occasion, this does not mean that the amounts

charged were not legal or proper, and the Court will read no such inference into the Complaint. Plaintiff has not specifically alleged any misleading or improper charges other than the inspection fees already addressed above. For all of these reasons, Plaintiff has failed to sufficiently allege any violation of the FDCPA occurring within the statue of limitations period.

B. <u>Fair Credit Reporting Act</u>

Plaintiff's Fair Credit Reporting claim is based on his allegation that Nationstar reported failed to follow reasonable procedures to ensure the accuracy of information it reported, and consequently gave derogatory and inaccurate statements and information relating to him and his finances to third party credit reporting bureaus, all in violation of 15 U.S.C. § 1681e(b). Section 1681(e) states that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

Plaintiff generally alleges that Nationstar was a "'persons' and/or 'consumer reporting agencies' and/or 'furnishers of information' as those terms are defined in the FCRA." (Complaint, ¶ 137). He does not specify which of these three definitions Nationstar actually fits under. He also does not allege that Nationstar prepared any consumer reports as defined in the FCRA. The factual allegations state that Nationstar provided information to the credit reporting agencies, but not that Nationstar, itself, prepared or issued any consumer credit reports. Nationstar cannot be held liable as a consumer reporting agency for credit reports it did not prepare, and which were issued by third party credit reporting agencies. *See, e.g., Brown v. Wal-Mart Stores, Inc.*, 507 F.App'x 543, 546 (6th Cir. 2012). This section of the FCRA does not impose liability on an entity that reports misinformation to a credit reporting agency even if it

failed to follow reasonable procedures to ensure accuracy of the information, which is all that is sufficiently alleged in the Complaint.

Although not specifically cited in the Complaint, the factual allegations in the Complaint would qualify Nationstar as a "furnisher of information" under the FCRA, making them liable under 15 U.S.C. §1681s-2(a). This Section of the FCRA, however, is not enforceable by a private cause of action. *See, e.g., Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 151 (2d Cir. 2012); *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 445 (2d Cir. 2015). There is a private cause of action for failing to conduct an investigation to identify errors in a credit report once notified by a consumer reporting agency of a dispute, however Plaintiff's Complaint makes no allegation that Nationstar was notified of a dispute, or that they failed to investigate one. Consequently, Plaintiff's Complaint fails to sufficiently state a claim against Nationstar under the FCRA.

C. Federal RICO, 18 U.S.C. § 1961, *et seq*

To state a claim under the Federal RICO statute, a plaintiff must plead the following elements: "(1) the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 483 (6th Cir. 2013). A RICO enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). To show an "enterprise" under RICO, a plaintiff must show "(1) an ongoing organization with some sort of framework . . . for making and carrying out decisions; (2) that the members of the enterprise functioned as a continuing unit with established duties; and (3) that the enterprise was separate and distinct from the pattern of racketeering activity in which it engaged." *Ouwinga v.*

*Benistar, 419 Plan Services,* Inc., 694 F.3d 783, 794 (6th Cir. 2012). A corporation may not be liable under section 1926(c) for participating in the affairs of an enterprise that consists only of its own subdivisions, agents, or members. An organization cannot join with its own members to undertake regular corporate activity and thereby become an entity distinct from itself." *Begala v. PNC Bank, N.A.,* 214 F.3d 776, 781 (6th cir. 2000). Further, absent evidence that the members are associated in any manner separate and apart from their corporate activities, there can be no RICO enterprise. *See, Atkinson v. Anadarko Bank & Trust Co.,* 808 F.2d 438, 440-441 (5th Cir.). "Routine business relationships, without more, are insufficient to establish a RICO claim." *Robins v. Global Fitness Holdings, LLC,* 838 F.Supp. 631, 653 (N.D. Ohio Jan. 18, 2012)(citations omitted). This holds true even if the related businesses have conspired to commit fraud, unless they are organized in such a way as to enable them to function as a racketeering organization for other purposes. *VanDenBorech v. CommonPoint Mortgage Co.,* 210 F.3d 696, 699 (6th Cir. 2000).

Plaintiff claims that Nationstar, Solutionstar and "all third-party vendors which conducted the computer-generated property inspections" are members of a RICO enterprise. (Complaint, ¶ 189). The Complaint, however, fails to allege any facts that would support this conclusion. The Complaint recognizes that Solutionstar is a wholly-owned subsidiary of Nationstar, (Complaint, ¶ 20), and fails to allege that they were associated in any manner other than in performing servicing activities. There are no allegations that would give rise to an inference that they were functioning as a racketeering organization for other purposes. The Complaint does not set forth any facts that would support a finding that Nationstar and Solutionstar formed an enterprise that was separate and distinct from the pattern of racketeering activity in which it engaged, and it,

therefore, fails to sufficiently allege an enterprise for purposes of RICO liability.

Plaintiff's Complaint also fails to sufficiently allege that either Nationstar or Solutionstar were part of a RICO enterprise with the third-party vendors who conducted the inspections at issue. There is no allegation that the third-party vendors had anything other than a routine business relationship with these Defendants. There is no hint of a special relationship between any of the vendors and the Defendants, nor that the Defendants needed to use specific vendors in order to accomplish their alleged scheme. The Complaint does not assert that the vendor's connection to the Defendants, or to the Plaintiff's alleged harms are anything other than fortuitous. There is no allegation that the vendors committed fraud or engaged in an other improper behavior, nor that they were aware of or participated in any of the allegedly improper decisions and activities complained of by Plaintiff. Therefore, the Complaint fails to state a claim for RICO violations because it does not adequately allege an enterprise under the RICO statute.

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is hereby GRANTED in part. (ECF #8). Counts One, Three, and Six are dismissed with prejudice. This resolves all federal claims set forth in the Complaint. The Court declines to assert jurisdiction over the remaining state law claims. The remaining claims are, therefore, remanded back to the Cuyahoga County Court of Common Pleas. IT IS SO ORDERED.

/s/ Donald C. Nugent
Judge Donald C. Nugent
United States District Judge

Date: December 21, 2017